# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

## Affidavit

I, Charles Root, a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

1. I have been employed as a police officer with the City of Joplin, Missouri, since November 2004 and a sworn law enforcement officer since 1994. I am currently a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) Cyber Crimes Task Force in Joplin, Missouri. I have been assigned to investigate crimes against children. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have attended training provided by the FBI Cyber Crime Division, the FBI's Regional Computer Forensic Laboratory, and the Missouri Internet Crimes Against Children (ICAC) Task Force. I am also assigned to the Southwest Missouri Cyber Crimes Task Force (SMCCTF).

2. As a TFO, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth the facts that I believe necessary to establish probable cause to believe that Steven Edward Moffis has violated 18 U.S.C. § 2252(a)(2) and (b)(1), that is, receipt and distribution of child pornography.

1

## STAUTORY AUTHORITY

4. Title 18 United State Code, Section 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

## DEFINITIONS

5. The following definitions apply to this Affidavit:

   a. The term "visual depiction" includes undeveloped film and videotape, and data stored on a computer disk or by electronic means which is capable of conversion into a visual image, and also includes any photograph, film, video, picture, digital image or picture, computer image or picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means.

   b. The term "sexually explicit conduct" has the meaning given the term in section 2256(2)(A) or 2256(2)(B).

   c. The term "sexually explicit conduct," under 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

d. The term "sexually explicit conduct," under 18 U.S.C. § 2256(2)(B)(i-iii), is defined as (a) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (b) graphic or lascivious simulated bestiality, masturbation or sadistic or masochistic abuse; or graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

e. The term "graphic," when used with respect to a depiction of sexually explicit conduct, means that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted.

## PROBABLE CAUSE

6. On September 20, 2017, SMCCTF TFO Joseph Neuschwander was conducting an online child pornography investigation into users on the BitTorrent peer to peer (P2P) file sharing network. TFO Neuschwander identified a device at Internet Protocol (IP) address 24.137.165.52 as a device sharing 7,408 files of suspected child pornography.

7. On September 20, 2017, TFO Neuschwander searched the American Registry for Internet Numbers (ARIN) and determined that IP address 24.137.165.52 was owned by Cable America Missouri. On September 22, 2017, TFO Neuschwander sent an investigative subpoena to Cable America Missouri requesting subscriber information for IP address 24.137.165.52.

8. On September 22, 2017, TFO Neuschwander discovered that on February 14, 2017, Boone County, Missouri, Sheriff's Office Detective Tracy Perkins had downloaded

3

690 suspected images of child pornography from a device using the BitTorrent file sharing network at IP address 24.137.165.52. Detective Perkins forwarded the images she obtained from IP address 24.137.165.52 to TFO Neuschwander. TFO Neuschwander reviewed the images, and he confirmed that the many of the images depicted minors under the age of 18 engaged in sexually explicit conduct.

9. On September 25, 2017, Cable America Missouri responded to TFO Neuschwander's investigative subpoena. The subscriber was identified as a Jeanie Moffis (hereinafter "Jeanie") with a service address at a residence in Willow Springs, Missouri, a location within the Western District of Missouri.

10. On October 6, 2017, TFO Neuschwander applied for and received a state search warrant from the Howell County, Missouri, Circuit Court for Jeanie's residence. On October 12, 2017, members of the SMCCTF, the Missouri State Highway Patrol (MSHP), and the Willow Springs Police Department (WSPD) executed the state search warrant for Jeanie's residence in Willow Springs Missouri.

11. Upon arriving at the residence, law enforcement was unable to locate anyone at the residence. Law enforcement contacted Jeanie at her place of employment, and they requested that she return home for the execution of the search warrant. After arriving at the residence, TFO Neuschwander presented Jeanie with a copy of the search warrant. Jeanie allowed law enforcement into the residence, and she told them where the electronic devices were located in the residence. Jeanie stated that her husband, Steven Edward Moffis (hereinafter "Moffis") was at a lake with his father. At TFO Neuschwander's request, Jeanie contacted Moffis and asked him to return home. Moffis arrived at the residence after being contacted by Jeanie.

4

12. After arriving at the residence, the affiant and TFO Neuschwander contacted Moffis, they asked Moffis if he would be willing to speak with them in a patrol vehicle, and Moffis stated he would. Moffis was advised of his *Miranda* rights, and Moffis stated he understood his rights and agreed to speak with the affiant and TFO Neuschwander. TFO Neuschwander explained to Moffis that law enforcement were there because they were concerned with activity that was occurring on an IP address at the Moffis's residence. TFO Neuschwander asked Moffis if he could explain what was occurring. Moffis admitted that he was addicted to child pornography. Moffis stated that he had been addicted to child pornography for seventeen years. Moffis stated that the addiction was so strong, that even when he tried to stop, after about two weeks he would begin dreaming about it.

13. Moffis stated that he searched for child pornography on the Internet using search engines like Yahoo, as well as using Torrents. Moffis stated he downloaded a Torrent downloader using the Playstore. Moffis also identified "Cyber Lolita" as a website he utilized to find child pornography. Moffis admitted that he had viewed nude images of children to hardcore images involving infants engaged in sexual activities with other adults or children. Moffis admitted that he would masturbate while viewing child pornography. Moffis stated that his preference was female children, five to 10 yearsold. Moffis stated that he would download files containing child pornography and then delete the files after viewing them. Moffis admitted that the last time he had viewed child pornography was on his cellular phone the previous evening. Moffis provided law enforcement with his cellular phone, a LG model US990, and the password.

14. During the interview, Moffis denied ever touching a child in a sexual manner, or taking any sexually explicit images of any child. Moffis admitted that he was attracted to a now 14-year-old female child that he taught music lessons to when she was 10 years old.

15. TFO Neuschwander asked Moffis if he would be willing to come to MSHP Troop G Headquarters for a polygraph examination, and Moffis stated he would. MSHP Sergeant Warren Weidemann transported Moffis to Troop G Headquarters. During the pre-test interview, Moffis disclosed to Sergeant Weidemann that in 2012 he had sexually assaulted a two month-old baby (hereinafter "Jane Doe"). Moffis admitted that he sexually assaulted Jane Doe three times in 2012, twice at a residence in Willow Springs, Missouri, and once at a hotel in Springfield, Missouri. Moffis admitted that he performed oral sex on Jane Doe and rubbed his penis on Jane Doe's vagina. Moffis stated he masturbated and ejaculated onto Jane Doe's stomach. Moffis also admitted he inserted his penis into Jane Doe's mouth. In a post-test interview, Moffis confirmed the admissions he made to Sergeant Weidemann to TFO Neuschwander.

16. On October 13, 2017, SMCCTF TFO Larry Roller conducted a forensic examination of Moffis's LG cellular phone. The examination revealed one video and 41 images of child pornography. The affiant reviewed the files and confirmed that the files depict children less than 18 years old engaged in sexually explicit conduct. For example, one imaged depicts a five to six year-old male child being anally penetrated by an adult male. Another image depicted a five or six year-old male child being forced to lick the vagina of an adult female.

6

Case 6:17-cr-03130-MDH   Document 1-1   Filed 10/18/17   Page 6 of 7

17. The affiant verified that Moffis's LG model US990 cellular phone was manufactured outside the state of Missouri and would have had to cross state lines to enter Missouri. Furthermore, Yahoo and the BitTorrent network utilize the Internet.

**CONCLUSION**

18. Based on the above facts, this affiant believes there is probable cause in support of a criminal complaint against Steven Edward Moffis, for violation of 18 U.S.C. § 2252(a)(2) and (b)(1), that is, receipt and distribution of child pornography.

*[signature]*

Charles Root
Task Force Officer
Federal Bureau of Investigation

Sworn and subscribed to before me this __18th__ day of October 2017.

*[signature]*

David P. Rush
United States Magistrate Judge
Western District of Missouri